UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AZIZA VAFOKULOVA, individually and as the Administratix of the ESTATE OF BAHTIYOR VAFOKULOVA, and on behalf Of JOSE VAFOKULOVA and REGINA VAFOKULOVA, minor children<br>    Plaintiffs<br>v.<br><br>UA INTERNATIONAL CONSULTING, CORP., ARTHUR WILLIAMS, SUNTECK TRANSPORT CO., INC., PRESPERSE CORPORATION, NEW PRIME, INC., d/b/a PRIME INC., and RLI INSURANCE CO.<br>    Defendants | CIVIL ACTION<br><br>NO.: _____ |

## NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

    Defendant, Sunteck Transport Co., Inc., by and through their undersigned attorneys, Palmer Biezup & Henderson LLP, respectfully aver as follows:

**I.**    **Statement of the Case**

    1.    Plaintiffs, Aziza Vafolulova individually and as the Administratrix of the Estate of Bahtiyor Vakokulov, filed a Complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania, on or about May 5, 2017, captioned *Aziza Vafolulova individually and as the Administratrix of the Estate of Bahtiyor Vakokulov v. UA International Consulting, et al.*, under Docket Number 170501232, naming Sunteck Transport Co., Inc., (hereinafter "Sunteck") among others, as defendants. See Plaintiffs' Complaint attached hereto as Exhibit "A".

    2.    Defendant Sunteck received a copy of Plaintiffs' Complaint via certified mail in Florida on or about May 11, 2017. (See Affidavit of Service and copy of Certified Mail Return Receipt confirming receipt of Complaint on May 11, 2017, attached as Exhibit "B".) This was the

earliest date on which Sunteck received notice of the existence of the Complaint and the lawsuit against them.

3. While not admitting that Defendant Sunteck was properly served with the Complaint in this matter, or that this Defendant is a proper party to this matter, said Defendant asserts that Removal is timely because this Notice of Removal is being filed within 30 days of May 11, 2017, the earliest date on which Defendant Sunteck was served with a copy of the Complaint. As a Notice of Removal must be filed no later than 30 days after service of the Summons and Complaint, this Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

4. The lawsuit filed by Plaintiffs alleges that Plaintiffs' Decedent was a passenger in a tractor trailer which was involved in a motor vehicle accident on August 19, 2016, in South Carolina. Plaintiffs' allege that the tractor trailer in which Decedent was a passenger was loaded with 55 gallon drums alleged to contain chemicals in New Jersey and, but for the accident, the tractor trailer would have completed its delivery in Florida.

5. The route that the tractor trailer took from New Jersey to South Carolina is not currently known or detailed in the Complaint but clearly involved travel through multiple states.

6. Plaintiffs are alleged to be citizens of Pennsylvania and filed their lawsuit in the Court of Common Pleas for Philadelphia County, Pennsylvania.

7. The Complaint alleges that Sunteck was the broker who arranged for Defendant UA International, and its driver, Defendant Arthur Williams, to transport cargo owned by Defendant Presperse, on a chassis alleged to have been owned by Defendant New Prime, Inc., d/b/a Prime, Inc., which is alleged to have been insured by Defendant RLI Insurance Co.

8. The Complaint defined Sunteck as the "Broker" (Complaint at ¶ 5) and alleges that Sunteck contracted with UA International (the "Trucking Company") or Arthur Williams (the "Driver") to transport the substance contained in the 55 gallon drums from New Jersey to Florida. (Complaint at ¶ 15).

9. Plaintiffs allege that the substance to be transported was "classified under the Federal Motor Carrier Safety Administration ("FMCSA") Regulations as a hazardous material." (Complaint at ¶ 18).

10. Plaintiffs alleged in their Complaint that: the Defendant Driver lacked competence and did not have a hazardous materials endorsement on his commercial driver's license (Complaint at ¶ 21); the Defendant Trucking Company lacked competence and was not registered with the US Department of Transportation Pipeline and Hazardous Materials Safety Administration to transport hazardous materials (Complaint at ¶ 22); that despite this alleged lack of registration (which Sunteck disputes was required to transport the subject cargo) Sunteck selected, and the Shipper entrusted, the Defendant Trucking Company and Defendant Driver with transportation of the alleged hazardous material for transport "over almost 1,000 miles of public highway" (Complaint at ¶ 23); that at the time of the accident Defendant Driver was unlawfully using his cellular telephone "in violation of the FMCSA Regulations (Complaint at ¶ 26); that Defendant Driver was cited by a motor carrier enforcement officer at the scene of the crash (upon information and belief a police officer from South Carolina) cited Defendant Driver with using a hand-held mobile telephone while operating a commercial motor vehicle (Complaint at ¶ 27); that "the 55 gallon drums" into which the substance being transported were loaded were loaded onto and/or secured in the Tractor-Trailer's trailer in violation of the FMCSA regulations (Complaint at ¶ 28); that Sunteck knew or should have known that Defendant Trucking Company had no safety manual,

internal safety training or other program to verify that its drivers maintained adequate levels of competency and safe-driving awareness (Complaint at ¶ 32); that Sunteck knew or should have known that Defendant Trucking Company had received several driver safety and equipment violations as the result of FMCSA inspections in the three months prior to contracting with it to transport the Hazmat load (Complaint at ¶ 33); and that Sunteck either did not verify the qualifications of Defendant Trucking Company and Defendant Driver to carry hazardous materials, or improperly offered the Hazmat load to an unqualified motor carrier and driver. (Complaint at ¶ 36).

11.     Plaintiffs further alleged in their Complaint that: "Defendant Driver was also negligent, careless and reckless for…Operating a tractor trailer in violation of applicable federal and state laws, regulations and statutes" (Complaint at ¶ 52(j)); that Sunteck violated – and encouraged Defendant Trucking Company to violate – state and federal statutes and regulations" (Complaint at ¶ 72); that "as a direct and proximate result of the violations by Defendant Trucking Company and the Broker of state and federal statutes and regulations designed to protect people like Decedent, Plaintiffs sustained damages as described herein" (Complaint at ¶ 73); that Sunteck violated – and encouraged Defendant Trucking Company to violate – state and federal statutes and regulations" (Complaint at ¶ 81); and that "the negligent and reckless violations of state and federal statutes and regulations by Broker and Shipper were the direct and proximate cause of Decedent's death and Plaintiffs' damages as further described herein". (Complaint at ¶ 82).

12.     The Complaint alleges causes of action for: wrongful death (Count I - Paragraphs 37-40), Survival (Count II - Paragraphs 41-47); Negligence against Defendant Driver (Count III - Paragraphs 48-53); Negligence per se against Defendant Driver (Count IV - Paragraphs 54-56);

Vicarious Liability against Defendant Trucking Company (Count V - Paragraphs 57-60); Vicarious Liability against Broker (Count VI - Paragraphs 61-64); Direct Negligence against Broker [Moving Defendant] (Count VII - Paragraphs 65-69); Negligence per se against Broker (Count VIII - Paragraphs 70-73); Direct Negligence against the Shipper (Count IX - Paragraphs 74-78); Negligence per se against the Shipper and Broker (Count X - Paragraphs 79-82); Statutory Liability against Trailer Owner and Trailer Owner's Insurer (Count XII - Paragraphs 83-87).

13. The wrongful death claims are brought pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. §8301 (Complaint at ¶ 38) and the survival action is brought pursuant to 42 Pa.C.S.A. §8302 (Complaint at ¶ 42).

## II. Plaintiffs' Claims Against Sunteck Arise Under Federal Law

14. As alleged above, Plaintiffs have alleged that Sunteck is liable for damages resulting from an accident involving a common carrier on federal highways and in alleged violations of federal statutes, including the FMCSA, as well as other as yet unidentified federal statutes and regulations.

15. Transportation of the subject chemicals by motor carrier, for compensation, from New Jersey to Florida, constituted transportation in interstate commerce under 49 U.S.C. 13102 §§(2), (14) and (23) and 49 U.S.C. §13501(1)(A)[The Secretary of Transportation and the Surface Transportation Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier (1) between a place in (A) a State and a place in another State.]

16. The above identified claims and allegations asserted against Sunteck relate to the transportation of the cargo by a common carrier engaged in interstate commerce are governed exclusively by federal law, including the Federal Aviation Administration Authorization Act of

1994 ("FAAAA"), 49 U.S.C. § 14501(c). Based on Plaintiffs' allegations that the 55 gallon drums at issue were transported interstate by a common carrier, the law governing any claim for damages related to damages arising from the subject shipment is the FAAAA. The FAAAA preempts state law claims against brokers and motor vehicle carriers for interstate shipments — regardless of whether or not air travel is involved:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A) (emphasis added).

17. The FAAAA contains language that specifically preempts all state law causes of action (other than breach of contract – which is not alleged in this matter), related to a transportation broker's prices, routes, or services. The FAAAA (49 U.S.C. §14501(c)(1) provides, in pertinent part, as follows:

> (c) Motor carriers of property. (1) General rule. Except provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, other service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

18. Further, as stated in *Rowe v. New Hampshire Motor Transp. Ass'n.*, 552 U.S. 364, 370–71 (2008) (internal citations and punctuation omitted) (*quoting Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–34 (1992)), in determining whether the FAAAA expressly preempts the claim, the court must ask whether

> (1) that "[s]tate enforcement actions having a connection with, or reference to," carrier "'rates, routes, or services' are pre-empted," (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services "is only indirect," (3)

6

that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and preemption-related objectives, ....

19. The language of the FAAAA is nearly identical to that contained in the Airline Deregulation Act ("ADA") (presently codified at 49 U.S.C. § 41713(b)(4)(A)), which has been construed by the United State Supreme Court to preempt all claims except those for breach of contract. *See, e.g., Morales v. TransWorld Airlines*, 504 U.S. 374 (1992); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 112 S. Ct. 2031, 119 L. Ed. 2d 1597 (1995); *see also, Yellow Transportation, Inc., v. DM Transportation Management Services, Inc.*, 2006 WL 2871745 *2 (ED Pa. October 4, 2006, J. Davis) ("[t]he Supreme Court's broad construction of the pre-emption provision of the ADA provides an analogical template by which to interpret § 14501(c)(1) of the ICCTA;" *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 86, n. 4 (1st Cir. 2011), *cert. denied* 132 S.Ct. 761 (2011) ("[c]ourts have construed the two statutes [ADA and FAAAA] in *pari materia* and have cited precedents concerning either act interchangeably ...") *Martins v. 3PD, Inc.*, CIV.A. 11-11313-DPW, 2013 WL 1320454 *11 (D. Mass. Mar. 28, 2013)("*Wolens* allows a plaintiff to bring a breach of contract action against an airline or motor carrier, but prevents him from seeking to expand the scope of recoverable damages by bringing additional, common law claims such as unjust enrichment, negligence, and fraud.") Due to the similarity in the language of the preemption provisions, courts rely on Airline Deregulation Act case law in deciding preemption cases under the Motor Carrier Act. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008).

20. Courts have consistently followed the Supreme Court's decisions regarding the broad, preemptive power of the ADA. *See Yellow Transportation, Inc., v. DM Transportation Management Services, Inc.*, 2006 WL 2871745 * 2(ED Pa. October 4, 2006, J. Davis) (the Supreme

Court has interpreted the ADA in a broad and expansive manner. *See, e.g., Gary v. The Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir.2005) (noting that Supreme Court has given "broad interpretation" to pre-emption provision of ADA)"; *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1197 (9th Cir. 1999) (". . . [W]e agree with the Fifth Circuit that state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the ADA").

21. Courts have routinely determined that negligence claims against transportation brokers are preempted under the FAAAA. *See Kashala v. Mobility Services, International LLC*, 2009 U.S. Dist. LEXIS 64334, (D. Mass. 2009) ("any negligence claim against Mobility [as a broker] is preempted by 49 U.S.C. § 14501(c)"); *Huntington Operating Corp. v. Sybonney Express, Inc.*, 2010 U.S. Dist. LEXIS 55591 (S.D. Tex. 2010) (in dismissing a negligence claim against a broker, the court, citing *Morales, Deerskin Trading Post, Yellow Transportation* and other cases, ruled "in short, 49 U.S.C. § 14501 broadly preempts state law claims that would regulate interstate transportation of goods"); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638 (N.D. Tex. 2010) (the court, following *Huntington* and the statutory and case law precedents cited therein, ruled "49 U.S.C. § 14501 broadly preempts state law claims regulating interstate transportation of goods [including negligence], and Chatelaine's state law claims other than breach of contract against Twin Modal are preempted under the Interstate Commerce Act."); *Wise Recycling, LLC v. M2 Logistics*, 2013 U.S. Dist. LEXIS 64461 (N.D. Tex. 2013)(court dismissed negligence claim against broker as preempted under FAAAA; *Non Typical, Inc. v. Transglobal Logistics Group, Inc.*, 2012 U.S. Dist. LEXIS 73452, 2012 WL 1910076, ( E.D. Wis. 2012) (dismissing negligence claim against broker due to preemption under FAAAA.

22. Numerous courts, including the Eastern District of Pennsylvania, have held tort claims against brokers to be preempted by Section 14501(c). *Belnick, Inc. v. TBB Global*

*Logistics, Inc.*, 106 F. Supp. 3d 551 (E.D. Pa. 2015) (finding plaintiff's state-law tort claims to be preempted, and stating that "we agree with numerous federal courts that have found the ICCTA preempts precisely the kinds of state-law tort claims that [the plaintiff brings here], since those claims relate directly to [the defendant]'s role as a broker..."); *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250 (D.N.J. 2016) (finding common law claims for breach of bailment and negligence against broker to be expressly preempted); *Marx Companies, LLC v. W. Trans Logistics, Inc.*, CIV.A. 14-751 JAP, 2015 WL 260914, at *4 (D.N.J. Jan. 21, 2015) (looking to the outcomes of similar cases in numerous other district courts to hold that negligence claims against a broker are preempted, finding that the claims "undoubtedly relate to the service of the broker"); *Huntington Operating Corp. v. Sybonney Exp., Inc.*, No. H-08-781, 2010 WL 1930087 (S.D. Tex. May 11, 2010) (dismissing negligence claims against the broker under federal preemption where goods were stolen in transit, stating, "49 U.S.C. § 14501 broadly preempts state law claims that would regulate interstate transportation of goods"); *Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, NO. 10-C-1058, 2012 WL 1910076 (E.D. Wis. May 28, 2012) (holding negligence claim against broker was preempted by the FAAAA, and explaining that the negligence claim would affect the broker's routes, rates, and services because the millions of dollars at stake in the negligence claims would "plainly have an economic effect on the rates [the defendant] charges and how it provides its transportation brokerage services").

23. The FAAAA therefore preempts any attempts to apply and enforce state law. In other words, any claim Plaintiffs may have against Sunteck related to any activities they may have undertaken regarding the subject shipment of the chemicals which Plaintiffs allege were in done in violation of both federal and states laws, statutes or regulations arises under the laws of the United States, not state law. See 28 U.S.C. § 1441(c)(1)(A).

24. The conflict between the application of Pennsylvania law as sought by Plaintiff, over the possible application of law from the numerous other states who may have an interest in this matter, is the reason preemption was developed, so as to allow a uniform application of federal law to transportation of goods in interstate commerce.

25. Plaintiffs' lawsuit is removable as provided by 28 U.S.C.§ 1441(a), inasmuch as this Court has original jurisdiction of a case based on and subject to a claim or right arising under the laws of the United States (28 U.S.C. § 1331 – Federal Question) and no Act of Congress expressly prohibits removal of this lawsuit.

### III. Consent of all Defendants

26. 28 U.S.C.§ 1446(b)(2) requires that when a civil action is removed pursuant to 28 U.S.C.§ 1441(a), then "all defendants who have been properly joined and served must join in or consent to the removal of the action.

27. While not admitting that all parties identified by Plaintiff in their Complaint are proper parties or were properly served, Sunteck has spoken either with counsel for each of the named Defendants or the named Defendant itself and obtained written permission or consent to remove this action to this Court, which is being filed within 30 days of service of the Complaint on all Defendants, as noted below:

   a. According to the Sheriff's Return of Service (attached as Exhibit "C"), Defendants UA International Consulting Group and Arthur Williams were served with the Complaint on May 15, 2017. On May 30, 2017 an Entry of Appearance of Andrew Moore & Associates, LLC., on behalf of Defendants UA International Consulting Group and Arthur Williams was filed (Exhibit "D") and their written consent to removing the lawsuit to federal court is attached as Exhibit "E";

b. According to the Sheriff's Return of Service (attached as Exhibit "F"), Defendant New Prime, Inc., d/b/a Prime Inc., was served with the Complaint on May 12, 2017. Attached as Exhibit "G" is the written consent of counsel for Defendant New Prime, Inc., to removal of the lawsuit to federal court;

c. According to the Sheriff's Return of Service (attached as Exhibit "H"), Defendant RLI Insurance was served with the Complaint on May 15, 2017. Attached as Exhibit "I" is the written consent of counsel for Defendant RLI Insurance to removal of the lawsuit to federal court;

d. According to the Affidavit of Service of the Complaint on Defendant Presperse Corporation (attached as Exhibit "J"), Defendant RLI Insurance was served with the Complaint on May 11, 2017. Attached as Exhibit "K" is the written consent of Defendant Presperse Corporation to removal of the lawsuit to federal court.

28. Venue is properly laid in this district because this lawsuit is being removed from the Philadelphia Court of Common Pleas, which is located within the Eastern District of Pennsylvania. 28 U.S.C. § 1441(a).

29. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants are attached hereto either as previously referenced exhibits to this Notice of Removal or as Exhibit No. "L", which contains a copy of the Docket of the Philadelphia Court of Common Pleas.[1]

---

[1] Note that attached as Exhibit "A" to each Preliminary Objection filed in the Philadelphia Court of Common Plea as Exhibit "A" was a copy of the original Complaint. As the original Complaint has been attached to this Notice of Removal as Exhibit "A", the duplicate copies of the Complaint have not been included in Exhibit "L".

30. Pursuant to 28 U.S.C. § 1446(d) Defendant Sunteck will file a copy of this Notice of Removal with the Prothonotary's Office for the Philadelphia Court of Common Pleas and will serve Plaintiff's counsel, counsel for all Defendants and Defendant Presperse Corporation with a copy of the Notice of Removal and Notice filed in the State Court.

WHEREFORE, Defendant Sunteck Transport Co., Inc. with the consent of the remaining existing Defendants, remove to this Honorable Court the action now pending in the Philadelphia Court of Common Pleas, under Docket Number 170501232.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By: _____
Frank P. DeGiulio (#41577)
Charles P. Neely (#69981)
190 North Independence Mall West
Suite 401
Philadelphia, PA 19106
(215) 625-9900
fpd@pbh.com
cneely@pbh.com
Attorneys for Defendant
Sunteck Transport Co., Inc.

Dated: June 9, 2017